Bruce W. BEDWELL, Appellant–Defendant,

v.

SAGAMORE INSURANCE COMPANY, Appellee–Plaintiff.

No. 90A02–0102–CV–83.

Court of Appeals of Indiana.

Aug. 23, 2001.

Josef Musser, Kyle C. Persinger, Marion, IN, Attorneys for Appellant.

H. Joseph Cohen, Anthony M. Stites, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Appellant Defendant Bruce W. Bedwell ("Bedwell") appeals from the trial court's order granting summary judgment in favor of Appellee Plaintiff Sagamore Insurance Company ("Sagamore").

We reverse and remand to the trial court with instructions to the trial court to deny Sagamore's Motion for Summary Judgment.

### ISSUE

Bedwell states the issue as:

Whether the Sagamore automobile insurance policy at issue provided coverage for liability arising from a motor vehicle accident of a relative and resident of the named insured's household, regardless of whether the use of the automobile was permissive.

### FACTS AND PROCEDURAL HISTORY

On November 5, 1997, James A. Ryder ("James") applied for a policy of automobile insurance coverage with Sagamore. Ultimately, Sagamore issued a policy for automobile insurance coverage to James. At the time James applied for the policy, his son, Scott Ryder ("Scott"), was not a resident of James' household.

On June 24, 1999, Scott operated his father's 1987 Buick Somerset, and in the course of driving the car collided with Bedwell's vehicle. At the time of the collision, Scott was a permanent resident of his father's home.

Sagamore contemplated that Bedwell would seek coverage for damages sustained in the accident. On September 8, 1999, Sagamore filed a Complaint for Declaratory Judgment to determine whether insurance coverage was available under the facts of this case. Sagamore filed a motion for summary judgment on March 27, 2000. The trial court held a hearing on Sagamore's motion on November 15, 2000. On December 19, 2000, the trial court granted Sagamore's motion for summary judgment finding that (1) neither James nor Sagamore intended to provide coverage for Scott when James applied; and, (2) Scott was excluded from coverage under the insurance contract because he was not a permissive user of the vehicle. Bedwell appeals from this order of the trial court.

### DISCUSSION AND DECISION

When we review a trial court's decision to grant a motion for summary judgment, we must determine whether a genuine issue of material fact exists, or if the moving party is entitled to judgment as a matter of law. *See American States Ins. Co. v. Adair Indus., Inc.*, 576 N.E.2d 1272, 1273 (Ind.Ct.App.1991). We stand in the same position as the trial court and consider the same matters. *Id.*

The policy in question provides in relevant part as follows:

PART I—LIABILITY

COVERAGE A—LIABILITY COVERAGE INSURING AGREEMENT

**We** will pay damages for **bodily injury** or **property damage** for which an **insured person** is legally liable because of

the ownership or use of **your insured car** or a **non-owned car**. The **bodily injury** or **property damage** must be caused by an auto accident.

* * *

ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

As used in this Part, **"insured person"** means:

(1) **you, a relative** or **resident.**

(2) any person using **your insured car** with your express permission.

(3) any other person or organization but only with respect to legal liability for acts or omissions of:

(a) a person covered under this Part while using **your insured car;** or

(b) **you** while using a **car** other than **your insured car.** The **car** must not be owned or hired by that person or organization.

As used in this Part, **"insured person"** means with respect to a **non-owned car** only **you, a relative** or a **resident.**

* * *

DEFINITIONS USED THROUGHOUT THIS POLICY

* * *

(12) **"Relative"** means a person living in **your** household and related to **you** by blood, marriage or adoption, including a ward or foster child.

(13) **"Resident"** means a person, other than a relative, living in your household and listed on the application.

* * *

*EXCLUSIONS*

We do not provide coverage for **bodily injury** or **property damage:**

* * *

(17) arising out of the use of:

(a) **your insured car** by a person without your express permission.

(Appellant's App. 49–51) (Emphasis in original).

■ First, Sagamore contends, and the trial court found, that it did not intend to provide coverage for Scott. Sagamore supports this contention by citing to James' application for the policy. James did not list Scott as an additional driver. Furthermore, Sagamore and James stipulated that neither side intended to provide coverage for Scott at the time the application was completed and the policy was issued. However, the section of the application that provided for the exclusion of drivers from coverage under the policy is blank. James did not list Scott as an excluded driver.

■ Applications for insurance are not part of the policy unless specifically incorporated by the policy. *Anderson Mattress Co., Inc. v. First State Ins. Co.,* 617 N.E.2d 932, 937 (Ind.Ct.App.1993). Our review of the materials presented leads us to the conclusion that the policy did not specifically incorporate as a whole the application for insurance. Because there is nothing in the policy that explicitly makes the entire application part of the policy, the terms of the application cannot be used to create an ambiguity in the insurance policy. *Id.* Likewise, an application that is not explicitly part of the policy cannot be used to exclude coverage that would otherwise exist under the terms of the contract itself.

Scott is not excluded from coverage by the insurance contract. The definition of "resident" is modified by the restriction "and listed on the application." No such modifier is included in the definition of "relative," and Scott clearly qualifies as a

relative. Sagamore also contends that because Scott was not a disclosed driver on James' application Scott is not covered. Sagamore cites to the portion of the application that states that Sagamore would not cover a loss occurring during the operation of the vehicle by an undisclosed driver. Again, this argument fails because an unincorporated application for insurance is not a part of the insurance contract. Therefore, Sagamore's liability cannot be limited unless those terms are included in the contract itself. To the extent that the trial court relied upon the intent of the parties to reach its determination to grant Sagamore's motion for summary judgment, it was in error. We hold that Scott fell squarely within the definition of "relative" as defined by the insurance contract. Scott was related by blood to the insured and was a resident of the insured's household.

■■■■ Sagamore brought this action in order to determine whether coverage was provided under the terms of the insurance contract. The interpretation of an insurance policy is primarily a question of law for the court. *American States,* 576 N.E.2d at 1273. The provisions of an insurance contract are subject to the same rules of interpretation and construction as are other contract terms. *Id.*

■■■■ In construing a written insurance contract, we may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of an insurance contract. *Id.* A contract will be found to be ambiguous only when it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning. *Id.* at 1274. An ambiguity is not established simply because a controversy exists, and one party asserts an interpretation contrary to that asserted by the opposing party. *Id.* We must accept

an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions. *Burkett v. American Family Ins. Group,* 737 N.E.2d 447, 452 (Ind.Ct.App.2000). Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. *Id.* If an ambiguity exists and a dispute involves an insurer and its insured, then we must construe the language strictly against the insurer. *Id.* However, when a case involves a dispute between a third party and an insurer, we determine the general intent of the contract from a neutral stance. *Id.*

■■■■ Bedwell argues that the policy does provide coverage for Scott because Scott falls squarely within the definition of "relative" as the term is used in the policy. At the time of the accident Scott was a blood relative of James and was living in his household. Sagamore counters by arguing that Scott was excluded under the terms of the policy because he was a non-permissive user of James' vehicle. The trial court agreed with Sagamore. We agree with Bedwell.

In *American States,* a panel of this court considered an argument similar to the one made by Sagamore concerning an almost identical provision. In *American States,* instead of "relative" the term "family member" was used to identify the same class of people. Included among the list of exclusions, in *American States,* was "any person using a vehicle without a reasonable belief the person is entitled to do so," or, as in the present case, a "non-permissive user." Adair argued that an ambiguity existed in the policy because "family member" and "any person" were used in such a way as to give the impression that they referred to mutually exclusive classes of individuals. In other words, if an individual fit within the classification of "fami-

**780**

ly member" that individual could not be "any person" for purposes of the exclusion based on lack of permission. A panel of this court agreed that the usage of those terms created an ambiguity. 576 N.E.2d at 1275.

In the present case, the definition of "insured person" is meaningless unless the term "person," as used in the exclusion, is different from "person," as used within the definition of "insured person." No one would be covered unless he or she had express permission to drive the insured car. However, we agree with *American States* and find that the policy language is ambiguous. The creation of different classes by distinguishing between descriptive terms can create an ambiguity in a contract provision, even though the words by themselves are not ambiguous. *American States*, 576 N.E.2d at 1274. There is an ambiguity created by the manner in which the terms are used in the policy. Since reasonable persons may differ as to the meaning of the terms, the policy must be construed in favor of the insured. *See id.* at 1275. Thus, *American States* supports our view that Scott, a blood relative residing in James' household, was a covered insured under the policy, and we so hold.

In addition, if there is an ambiguity, the policy should be construed to further the policy's basic purpose of indemnity. *See Indiana Ins. Co. v. American Community Services, Inc.,* 718 N.E.2d 1147, 1153 (Ind.Ct.App.1999). Public poli-

cy requires a means by which wrongfully injured third persons can recover.

Therefore, we conclude that the trial court erred by granting Sagamore's motion for summary judgment. The manner in which "relative" and "any person" are used within the contract at issue leaves the impression that the terms identify mutually exclusive classes.

### CONCLUSION

The trial court erred by relying on the insurer and insured's contention that neither of the parties intended to provide coverage for a relative, when that relative was not excluded by the terms of the insurance policy itself. In fact, the relative fell squarely within the insurance contract's definition of "relative." Further, the usage of the terms "relative" and "any person" in the insurance contract created an ambiguity in the contract because the terms were used descriptively and left the impression that the two classes described by those terms were mutually exclusive.

Judgment reversed and remanded to the trial court with instructions to the trial court to deny Sagamore's Motion for Summary Judgment.

MATTINGLY-MAY, J., and BARNES, J., concur.